UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BEAZER HOMES CORP., | ) | Civil Action No.: 4:10-cv-2419-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| | ) | |
| HARTFORD FIRE INSURANCE COMPANY; NATIONWIDE MUTUAL FIRE INSURANCE COMPANY; NGM INSURANCE COMPANY; AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY; CLARENDON AMERICA INSURANCE; ALEA LONDON, LTD; CERTAIN INTERESTED UNDER-WRITERS AT LLOYD'S LONDON; CINCINNATI INSURANCE COMPANY; DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY; ESSEX INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY; SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA; UNION INSURANCE COMPANY; and WESTERN WORLD INSURANCE COMPANY; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**I.     INTRODUCTION**

This action arises out of the construction the St. Andews Townhomes ("St. Andrews Project") for which Plaintiff was the developer. Defendant insurance companies insure the various subcontractors involved in the St. Andrews Project. Plaintiff alleges that pursuant to its contracts with the subcontractors, it was to be named as an additional insured under each of the subcontractors' liability policies. Plaintiff alleges that Defendants have a duty to defend and indemnify it for potential liability arising from claims of construction defects asserted against Plaintiff in a separate action entitled <u>The St. Andrews Townhomes Homeowner's Association, Inc.,</u>

et al v. Beazer Homes USA, Inc. ("St. Andrews Action"). Plaintiff alleges that, despite its timely demands, Defendants have failed to provide Plaintiff with a defense and disclaim any duty to defend or indemnify Plaintiff for the claims made against it in the St. Andrews Action.

In this action, Plaintiff seeks a declaration of Defendants' respective obligations to Plaintiff regarding defense and indemnity for the St. Andrews Action pursuant to its status as an additional insured under the commercial general liability policies issues by Defendants to their named insureds. Plaintiff also asserts causes of action for breach of contract and breach of the duty of good faith and fair dealing.

Presently before the Court are Plaintiff's Motion to Compel (Document # 166) against Defendants Hartford Fire Insurance Company (Hartford), NGM Insurance Company (NGM), Nationwide Mutual Fire Insurance Company (Nationwide), and American Empire Surplus Lines Insurance Company (American Empire), Plaintiff's Motion to Bifurcate (Document # 167), Plaintiff's Motion for Protective Order (Document # 168) and Defendant Nationwide's Motion to Compel (Document # 169) against Plaintiff. These motions were referred to the undersigned pursuant to 28 U.S.C. § 636. A hearing was held on July 27, 2012.

## II.     PLAINTIFF'S MOTION TO BIFURCATE AND MOTION FOR PROTECTIVE ORDER AND NATIONWIDE'S MOTION TO COMPEL

Plaintiff's Motion to Bifurcate and Motion for Protective Order and Nationwide's Motion to Compel each relate to the production of Beazer's legal bills in the St. Andrew Action, and, thus, will be discussed together. In its discovery requests to Plaintiff, Nationwide seeks production of documentation, namely, legal bills, supporting Plaintiff's claim for defense costs in the St. Andrews Action. Plaintiff argues that the documentation sought by Nationwide is protected by the work-product doctrine and/or the attorney-client privilege. In its Motion to Compel, Nationwide argues that Plaintiff has waived any claim of privilege by putting the defense costs of the St. Andrews

Action directly at issue in this case.

Plaintiff agrees that the legal bills are necessary to the damages portion of its claim, but argues that they should not be produced until after the conclusion of the St. Andrews Action. To this end, Plaintiff files its Motion for Protective Order to prevent production of the legal bills until after the conclusion of the St. Andrews Action and its Motion to Bifurcate to bifurcate the trial of its damages claims as to Defendants' alleged obligations to defend and indemnify Plaintiff from the remaining issues in this case and to stay discovery regarding Beazer's damages until the underlying St. Andrews Action is fully resolved.

During the hearing, the parties discussed producing the legal bills in a manner that would prevent counsel and insurance adjustors involved in the St. Andrews Action from reviewing the documents. Counsel for Plaintiff indicated that it did not object to producing the legal bills as long as they are not provided to parties with adverse interests. Counsel for Nationwide indicated that it would not object to production of the legal bills under such an arrangement. Thus, the parties are directed to draft and submit within ten days of the date of this Order a proposed consent protective order regarding the production of Plaintiff's legal bills in the St. Andrews Action that specifically guards against the release of said legal bills to any attorney, insurance adjustor, or any other individual involved in the St. Andrews Action.

For these reasons, Plaintiff's Motion for Protective Order is denied and Nationwide's Motion to Compel is granted. Plaintiff must produce the requested documentation supporting its claim for defense costs in the St. Andrews Action within ten days of the filing of the protective order. Furthermore, because the protective order will alleviate any perceived prejudice[1] Plaintiff might have

---

[1] Rule 42(b), Fed.R.Civ.P., permits bifurcation of any issues for separate trial where such separation is in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. See R.E. Linder Steel Erection Co., Inc. v. Wedemeyer,

suffered by producing the legal bills, Plaintiff's Motion to Bifurcate is denied.[2]

### III.  PLAINTIFF'S MOTION TO COMPEL

####   A.    Documents Requested by Plaintiff

In it's Motion to Compel, Plaintiff seeks an order compelling the production of (1) underwriting files from 2004-present from Defendants Hartford, NGM, Nationwide, and American Empire, (2) underwriting guidelines from Defendants Hartford, Nationwide, and American Empire, and (3) claims handling guidelines from 2009-present from Defendants Hartford, NGM, and Nationwide.[3]  Defendants argue that the requested documents are not relevant to Plaintiff's claims.[4]

As noted above, Plaintiff alleges a cause of action for bad faith arising out of Defendants' conduct in handling the claims tendered to them by Plaintiff.  Plaintiff argues that claims handling guidelines provide insight as to what the insurance carrier itself deems to be good faith, reasonable conduct, and may provide specific time frames within which particular actions must be taken by the adjusters handling the claims.  Plaintiff argues that whether Defendants complied with their own guidelines in adjusting Plaintiff's claims is relevant and probative as to whether Defendants acted in good faith.

Plaintiff also seeks Defendants' underwriting files.  According to Plaintiff, an underwriting

---

Cernik, Corrubia, Inc., 585 F.Supp. 1530, 1534 (D. Md. 1984).  Plaintiff argues only that bifurcation is necessary to avoid prejudice.

[2] As Plaintiff's Motion to Bifurcate relates to trial, it is denied without prejudice with leave to re-file at a time closer to trial.

[3] Plaintiff also sought to compel production of insurance policies and claims files from Nationwide, but that issue has since been resolved.

[4] Defendants also argue in their Responses to the Motion to Compel that Plaintiff's Motion to Bifurcate defeats Plaintiff's attempt to obtain the requested discovery because in the Motion to Bifurcate, Plaintiff seeks to stay all discovery related to damages.  However, as discussed above, Plaintiff's Motion to Bifurcate is denied.  Therefore, this argument is moot.

-4-

file contains information gathered from the insured at the time of the policy formation and (1) evidences the contents and makeup of the policy, (2) includes information provided to the carrier with respect to the coverages requested, and (3) evidences amounts paid by the insured for the various coverages requested. Plaintiff asserts that it is not uncommon for insurance carriers to charge for an additional insured endorsement. Therefore, Plaintiff argues, where such a payment is made, it not only lays to rest any dispute as to the issuance of the subject endorsement, but also provides information as to the commercial context in which the endorsements were issued. Plaintiff argues that it is not unreasonable for it to obtain the underwriting files to ensure that the policies provided conform to the underwriting file information, that the insurance carrier complied with the coverages requested by the insured and/or whether other promises affecting Beazer's rights were made.

Finally, Plaintiff seeks production of Defendants' underwriting guidelines. Plaintiff asserts that an insurance carrier's underwriting guidelines contain information as to the carrier's asserted intent and purpose for various policy provisions, forms and coverages. Plaintiff argues that at issue in this litigation is not only as to the duties owed by Defendants but also as to the scope of those duties and, in particular, the intent of the additional insured endorsements in relation to the defense and indemnity of Plaintiff. Thus, Plaintiff argues, the underwriting guidelines are relevant to Plaintiff's claims.

### B.   Arguments Raised by Defendants

Defendant American Empire argues that its underwriting file and underwriting guidelines are irrelevant to Plaintiff's claims in this action.[5] American Empire has agreed that it owes Plaintiff a

---

[5]American Empire responded to Plaintiff's request for claims handling guidelines by indicating in a supplemental response that it does not have any documents responsive to that request. Plaintiff agreed at the hearing that the issue was moot as to claims handling guidelines

duty to defend in the St. Andrews Action. It argues that it disagrees with Plaintiff only as to the scope and amount of the defense obligation, and the underwriting files and guidelines have no bearing on these issues. It also argues that underwriting files and guidelines are not relevant to Plaintiff's bad faith claim because there is no allegation that American Empire wrote the policy in bad faith.

Defendant Hartford also argues that the documents requested by Plaintiff are not relevant to Plaintiff's claims because Hartford has agreed that it owes a duty to defend Plaintiff in the St. Andrews action and "the only dispute between [Plaintiff] and Hartford in this case concerns the scope of Hartford's defense (and potential indemnity) obligation, i.e., what portion of Beazer's defense costs (and potential indemnity costs) are within the scope of the 'additional insured' coverage Hartford provided to Beazer for the St. Andrews Action." Hartford Response (Document # 186). Hartford argues that the discovery sought by Plaintiff is not relevant to the "how much" issue, that is, the amount of defense costs (and potentially, indemnity costs) owed to Plaintiff by Hartford. At the hearing, Hartford argued that a bad faith cause of action could not stand against it because it has admitted a duty to defend Plaintiff in the St. Andrews Action but cannot move forward with that obligation because Plaintiff has not produced its legal bills.

Nationwide argues that the additional insured endorsement makes Plaintiff an insured "only with respect to liability for . . . 'property damage' caused, in whole or in part, by" the work of Nationwide's named insureds, and, because Plaintiff has failed to present evidence of property damage caused by the work of Nationwide's named insureds, it has failed to show an entitlement to coverage. Nationwide argues that the threshold issue in this case is a matter of policy interpretation, which is to be determined by the court by the four corners of the policies. Nationwide argues that

---

from American Empire.

this legal determination should be made prior to any discovery is done on the bad faith claim. Nationwide further argues that Plaintiff's claim presents a novel issue in South Carolina, and it is not bad faith for insurers to contest novel issues. Helena Chem. Co. v. Allianz Underwriters Ins. Co., 357 S.C. 631, 645, 594 S.E.2d 455, 462 (S.C. 2004).

Defendant NGM argues that the discovery sought by Plaintiff is not relevant because Plaintiff is not an additional insured under any of the policies issued to any of the subcontractors insured by NGM in the St. Andrews Action.

**C.     Discussion**

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons who know of any discoverable matters." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. To be relevant, the discovery sought simply must be "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenhiemer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). The party opposing a motion to compel bears the burden or showing why it should not be granted. Volumetrics Medical Imaging, LLC v. Toshiba America Medical Systems, No. 1:05-cv-955, 2011 WL 2470460, *4 (M.D.N.C. June 20, 2011)

Defendants' arguments generally fall into two categories: (1) Plaintiff's has raised a legal question as to the interpretation of the insurance policies, which is to be determined by the plain language of the policies, and, thus, the discovery sought is not relevant and (2) Plaintiff's bad faith cause of action is without merit, and, thus, the discovery sought is not relevant. As set forth above,

to be relevant, the discovery sought simply must be "any matter than bears on, or that reasonably could lead to other matter than could bear on, any issue that is or may be in the case." Oppenhiemer, 437 U.S. at 351.[6]  While it is true that contract interpretation, including the interpretation of insurance policies, is limited to the contract itself, if an ambiguity is found within the contract, the court may look to extrinsic evidence to determine the intent of the parties when forming the contract. Smith–Cooper v. Cooper, 344 S.C. 289, 295, 543 S.E.2d 271, 274 (Ct.App.2001) (holding where an agreement is clear on its face and unambiguous, "the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement"); McKinney v. McKinney, 274 S.C. 95, 97, 261 S.E.2d 526, 527 (1980) (noting that if an agreement is ambiguous, it is the court's duty to determine the intent of the parties and it may do so by examining extrinsic evidence).

A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business. Hawkins v. Greenwood Dev. Corp., 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) (quoting 17A Am.Jur.2d Contracts § 338, at 345 (1991)). Here, Plaintiff notes that it reads the insurance policies at issue differently from Defendants, including those like Hartford and American Empire, who agree that they have a duty to defend, because Defendants read the additional insured endorsements as limiting the defense provided to Plaintiff while Plaintiff reads no such limitation.  Whether a contract is ambiguous is a question of law for the court. S.C. Dep't of Natural Res. v. Town of McClellanville, 345 S.C. 617, 623, 550 S.E.2d 299, 303 (2001).  However, if the court finds the contract to be ambiguous, construction of

---

[6]Amendments to Rule 26 subsequent to Oppenhiemer clearly contemplate that any discovery sought must be relevant to a party's "claim or defense."  Rule 26(b)(1), Fed.R.Civ.P.

an ambiguous contract is a question of fact. Skull Creek Club Ltd. P'ship v. Cook & Book, Inc., 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct.App.1993). Whether an ambiguity exists in the insurance policies is not before the court at this time. However, to be relevant, the discovery sought need only bear on an issue that is or may be in the case regarding a party's claim or defense. If it becomes necessary to look beyond the four corners of the policies at issue, the underwriting guidelines and files would be relevant to determine the intent of the parties when entering into the policies. See, e.g., Penn. Nat'l Mut. Cas. Ins. Co. v. Doscher's Dorchester Road, Inc., No. 2:11-656, 2012 WL 652638, *5-6 (D.S.C. Feb. 28, 2012) (noting that claims, underwriting, and other such material may be subject to discovery where relevant to a claim in dispute but denying the motion to compel where there were no claims of bad faith or breach of duty or contract).

Likewise, Plaintiff's bad faith claim is an issue in this case. It is not necessary to determine the merit of the bad faith cause of action before allowing discovery related to it. "[T]he covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." Mixson, Inc. v. American Loyalty Ins. Co., 349 S.C. 394, 562 S.E.2d 659, 662 (Ct. App. 2009) (citing Tadlock Painting Co. v. Maryland Cas. Co., 322 S.C. 498, 473 S.E.2d 52, 53 (1996)). Defendants' claim handling guidelines are relevant to the handling of the claim tendered by Plaintiff, which is the central issue in any bad faith claim. See, e.g., Penn. Nat'l, 2012 WL 652638, *5-6.

In sum, Defendants have failed to show that the documents requested by Plaintiff are not discoverable. Therefore, Plaintiff's Motion to Compel is granted. Defendants shall have thirty (30) days from the date of this Order to produce 1) underwriting files from 2004-present from Defendants Hartford, NGM, Nationwide, and American Empire, (2) underwriting guidelines from Defendants Hartford, Nationwide, and American Empire, and (3) claims handling guidelines from 2009-present

from Defendants Hartford, NGM, and Nationwide.

## IV.     CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Compel (Document # 166) is **GRANTED**, Plaintiff's Motion to Bifurcate (Document # 167) is **DENIED**, Plaintiff's Motion for Protective Order (Document # 168) is **DENIED** and Defendant Nationwide's Motion to Compel (Document # 169) is **GRANTED**.  The parties are directed to draft and submit within ten (10) days of the date of this Order a proposed consent protective order regarding the production of Plaintiff's legal bills in the St. Andrews Action that specifically guards against the release of said legal bills to any attorney, insurance adjustor, or any other individual involved in the St. Andrews Action. Plaintiff must produce the requested documentation supporting its claim for defense costs in the St. Andrews Action within ten (10) days of the filing of the protective order.  Defendants shall have twenty (20) days from the date of this Order to produce 1) underwriting files from 2004-present from Defendants Hartford, NGM, Nationwide, and American Empire, (2) underwriting guidelines from Defendants Hartford, Nationwide, and American Empire, and (3) claims handling guidelines from 2009-present from Defendants Hartford, NGM, and Nationwide.

**IT IS SO ORDERED**.

                    s/Thomas E. Rogers, III
                   Thomas E. Rogers, III
                   United States Magistrate Judge

December 13, 2012
Florence, South Carolina